**FILED**

JUL 2 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HOWMET CORPORATION
6450 Rockside Woods
Boulevard S
Independence, Ohio 44131

                Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and
STEPHEN L. JOHNSON, Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

                Defendants.

Case: 1:07-cv-01306
Assigned To : Sullivan, Emmet G.
Assign. Date : 7/23/2007
Description: Admn. Agency Review

## COMPLAINT

COMES NOW Plaintiff Howmet Corporation ("***Howmet***"), by and through its undersigned counsel, and files this Complaint for judicial review of an administrative order of the United States Environmental Protection Agency ("***EPA***"). Howmet sets forth its claim for relief as follows:

## I.
## INTRODUCTION

1.     Howmet brings this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, to obtain judicial review of the May 24, 2007 "Final Decision" of the EPA's Environmental Appeals Board ("***EAB***") in *In re Howmet Corporation*, RCRA (3008) Appeal No. 05-04 (EAB, May 24, 2007), 13 E.A.D. ___ (hereinafter, the EAB's "***Final Decision***").

2.      The EAB's Final Decision upheld the September 30, 2005 "Initial Decision" of the Administrative Law Judge ("*ALJ*") in *In re Howmet Corporation*, EPA Docket Nos. RCRA-06-2003-0912 and RCRA-02-2004-7102 (hereinafter, the ALJ's "*Initial Decision*").

3.      In its Final Decision, the EAB affirmed the ALJ's finding that Howmet violated certain provisions of the Solid Waste Disposal Act, 42 U.S.C. §§ 6901–6992k, as amended by the 1976 Resource Conservation and Recovery Act and the 1984 Hazardous and Solid Waste Amendments (collectively, "*RCRA*"), and the RCRA implementing regulations promulgated by EPA.

4.      In its Final Decision, the EAB also affirmed the ALJ's finding that Howmet had fair notice of EPA's interpretation of the applicable regulatory provisions.

5.      In its Final Decision, the EAB assessed a civil penalty of $309,091 against Howmet for the violations referenced in Paragraph 3 above.

6.      For the reasons set forth herein, the EAB's Final Decision is (i) arbitrary, capricious, an abuse of discretion, or is otherwise not in accordance with law; (ii) contrary to constitutional right; (iii) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and (iv) without observance of procedure required by law.  Howmet respectfully requests that this Court review the EAB's Final Decision, and hold unlawful and set aside the EAB's Final Decision in its entirety, or otherwise remand this matter to the EAB for issuance of an order absolving Howmet of liability.

## II.
## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1355(a). The RCRA enforcement actions at issue in this case arose under federal law and regulations, as set forth in Paragraph 3 above.  Under 42 U.S.C. § 6928(a) and

(g), EPA seeks to enforce, and the EAB has assessed, a civil penalty against Howmet, as set forth in Paragraph 5 above.

8.    The EAB's Final Decision constitutes the final action of the EPA and is subject to review in this Court. *See* 40 C.F.R. §§ 22.30(f), 22.31(a); 5 U.S.C. § 704.

9.    Venue properly lies with this Court pursuant to 28 U.S.C. § 1391(b)(1) and (e)(1) because Defendants EPA and Stephen L. Johnson, in his official capacity as Administrator of the EPA, reside in the District of Columbia pursuant to 28 U.S.C. § 1391.

### III.
### PARTIES

10.    Howmet is a corporation organized under the laws of the State of Delaware.

11.    Howmet manufactures precision investment castings for aerospace and industrial gas turbine applications.

12.    The events that are the subject of the RCRA enforcement actions at issue in this case are alleged to have occurred at, or otherwise originated from, two facilities owned and operated by Howmet – one in Dover, New Jersey and another in Wichita Falls, Texas.

13.    In 2003, Defendant EPA brought the RCRA enforcement actions at issue in this case.

14.    EPA is an agency of the United States of America, headquartered in Washington, DC, that is charged with enforcement of RCRA and the agency's RCRA implementing regulations, including the assessment and enforcement of civil penalties for violations of RCRA and EPA's RCRA regulations.

15.    Defendant Stephen L. Johnson is sued in his official capacity as Administrator of the EPA.

## IV.
## FACTUAL AND PROCEDURAL BACKGROUND

16.     The undisputed material facts of this case are set forth in the parties' joint stipulations in the proceedings below. Those stipulations are attached hereto as *Exhibit A* and *Exhibit B*. Additionally, the factual and procedural background relevant to this Complaint is summarized below.

17.     At both its New Jersey and Texas facilities, Howmet used a solution of liquid potassium hydroxide ("*KOH*") to clean metal castings.

18.     The used KOH solution was characteristically hazardous, in that it was corrosive, as defined by the EPA's regulations, with a pH equal to or greater than 12.5.

19.     When the KOH was no longer suitable for use by Howmet, Howmet shipped the used KOH either to a permitted hazardous waste facility or to Royster-Clark, Inc. ("*Royster*"), a fertilizer manufacturer.

20.     Royster utilized the KOH as a source of potassium in, and as an additive to control the pH of, Royster's fertilizer mixture.

21.     The destination of the used KOH shipped by Howmet – either to a permitted hazardous waste facility or to Royster – depended solely on Royster's demand for KOH.

22.     Royster did not process or otherwise treat or reclaim Howmet's used KOH prior to adding it to the fertilizer mixture; Royster used the KOH in the same form as it was received from Howmet.

23.     EPA Regions 2 and 6 brought RCRA enforcement actions against Howmet in 2003, alleging that Howmet violated RCRA when it sent used KOH to Royster for use as a fertilizer ingredient without adhering to RCRA hazardous waste requirements.

24.     The ALJ consolidated the two enforcement cases for purposes of litigation.

25.     In his Initial Decision, the ALJ concluded that the used KOH that Howmet sent to Royster was a "spent material," and therefore a hazardous waste, and that Howmet had failed to manage this hazardous waste in accordance with RCRA and EPA's RCRA regulations.

26.     The ALJ also struck Howmet's affirmative defenses and denied Howmet's claim that it had not received fair notice of the regulatory interpretation of "spent material" advanced by EPA.

27.     On October 31, 2005, Howmet appealed the Initial Decision of the ALJ to the EAB.

28.     The EAB heard oral argument on April 11, 2006.

29.     In its Final Decision, the EAB affirmed the ALJ's findings that: (1) the used KOH Howmet sent to Royster was a "spent material" and, therefore, Howmet was liable for not managing the KOH as a hazardous material in accordance with RCRA; and (2) Howmet failed to prove that it had not received fair notice of the regulations.  As a result, the EAB assessed a penalty of $309,091 against Howmet.

30.     Howmet has exhausted all administrative remedies.

## V.
## APPLICABLE LAW AND REGULATIONS

31.     Under RCRA, "hazardous waste" is a subset of "solid waste."  42 U.S.C. § 6903(5).  Thus, if a substance does not meet the threshold definition of "solid waste," it cannot be "hazardous waste" or subject to RCRA or EPA's RCRA hazardous waste regulations.

32.     RCRA defines "solid waste" to include any "discarded material."  42 U.S.C. § 6903(27).

33.     EPA has, in turn, promulgated a definition of "discarded material" which provides, in part, that discarded materials include "spent materials" that are "[u]sed to produce

products that are applied to or placed on the land or are otherwise contained in products that are applied to or placed on the land." 40 C.F.R. § 261.2(c)(1)(B).

34.    A "spent material" is "any material that has been used and as a result of contamination can no longer serve the purpose for which it was produced without processing." 40 C.F.R. § 261.1(c)(1).

**VI.**
**STATEMENT OF CLAIM**

**COUNT I**

35.    Howmet adopts and incorporates herein by reference each and every allegation contained above in Paragraphs 1 through 34.

36.    The EAB's ruling in its Final Decision that the KOH used by Howmet and shipped to Royster is a "spent material" is contrary to the plain language and meaning, and any reasonable interpretation, of the applicable regulation, 40 C.F.R. § 261.1(c)(1).

37.    The KOH that Howmet sent to Royster was not a hazardous or solid waste because it was not a "spent material."

38.    KOH is produced for the purpose of providing a high concentration of hydroxide ions and a concentrated source of potassium.

39.    In Royster's fertilizer manufacturing operations, the KOH that Howmet used and then sent to Royster for use continued to serve the purpose for which it was produced without processing.

40.    Therefore, the KOH that Howmet shipped Royster was not a "spent material" under the plain meaning and language of the definition of "spent material" in 40 C.F.R. § 261.1(c)(1).

41.    Accordingly, the EAB's Final Decision is arbitrary, capricious, an abuse of discretion, or is otherwise not in accordance with law, and the penalty assessed therein is in excess of EPA's statutory jurisdiction, authority, or limitations under RCRA.

**WHEREFORE**, under Count I of its Complaint, Plaintiff Howmet respectfully requests that this Court hold unlawful and set aside the EAB's Final Decision in its entirety or grant any other relief this Court deems appropriate. Plaintiff further prays that it be awarded its costs and expenses incurred herein and in the proceedings below, including attorneys' fees, and that this Court render such other and further relief it deems just and proper.

## COUNT II

42.    Howmet adopts and incorporates herein by reference each and every allegation contained within Paragraphs 1 through 41.

43.    As set forth above, Howmet contends that the EAB's ruling in its Final Decision that the KOH used by Howmet and shipped to Royster is a "spent material" is unlawful and should be set aside. However, were this Court to conclude otherwise, Howmet submits, in the alternative, that it has not been given fair notice of the interpretation of "spent material" advanced by EPA in the proceedings below.

44.    Constitutional principles of due process dictate that a penalty may not be assessed where the regulated party has not been provided notice of an agency's interpretation of the applicable regulation.

45.    The plain wording of the definition of "spent material" fails to provide notice of EPA's interpretation.

46.    The preamble to the final rule defining "spent material" and other administrative materials do not provide adequate notice of EPA's interpretation of the term "spent material."

47.    EPA's interpretation has never been adequately expressed by EPA in any public forum and, therefore, cannot be applied in this case to levy penalties against Howmet.

48.    Therefore, EAB's decision ruling that Howmet did receive fair notice of EPA's definition of "spent material" is arbitrary, capricious, an abuse of discretion, or is otherwise not in accordance with law; contrary to constitutional principles of due process; and without observance of procedures required by law.

**WHEREFORE**, under Count II of its Complaint, Plaintiff Howmet respectfully requests that this Court hold unlawful and set aside the EAB's Final Decision in its entirety or otherwise remand this matter to the EAB for issuance of an order absolving Howmet of liability, or grant any other relief this Court deems appropriate. Plaintiff further prays that it be awarded its costs and expenses incurred herein and in the proceedings below, including attorneys' fees, and that this Court render such other and further relief it deems just and proper.

Respectfully Submitted,

Mara E. Zimmerman/DC Bar No.: 502040
VINSON & ELKINS L.L.P.
The Willard Office Building
1455 Pennsylvania Avenue NW, Suite 600
Washington, DC  20004-1008
Telephone:    202.639.6778
Facsimile:    202.879.8878

Bryan J. Moore/DC Bar No.: 482591
VINSON & ELKINS L.L.P.
The Terrace 7
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Telephone:    512.542.8520
Facsimile:    512.236.3329

ATTORNEYS FOR PLAINTIFF
HOWMET CORPORATION

Austin 858325v.1

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Howmet Corporation

88888

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Mark E. Zimmerman/DC Bar No.: 502040
VINSON & ELKINS L.L.P.
The Willard Office Building
1455 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004-1008
Telephone: 202.639.6778
Facsimile: 202.879.8878

## DEFENDANTS

United States Environmental Protection Agency and
Stephen L. Johnson, Administrator

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __11001__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01306
Assigned To : Sullivan, Emmet G.
Assign. Date : 7/23/2007
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZEN ...
FOR PLAINTIFF ... ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**        OR        ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Administrative Procedure Act, 5 U.S.C. §§ 701-706. Review of final order of administrative agency.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  July 23, 2007   SIGNATURE OF ATTORNEY OF RECORD — *NOT SIGNED* —

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.     RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# *EXHIBIT A*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

BEFORE THE ADMINISTRATOR

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| HOWMET CORPORATION, | )    DOCKET NO.: RCRA-02-2004-7102 |
| | ) |
| Respondent. | ) |

## JOINT STIPULATIONS

The following stipulations have been agreed to by the parties. These stipulations apply to the Howmet Corporation facility located in Dover, New Jersey and cover the time period August 6, 1999 through September 27, 2000, unless expressly stated otherwise. The parties agree that the facts set forth or summarized in the attachments hereto are undisputed and admissible as evidence in these proceedings.

1.  Howmet Corporation. ("Howmet" or "Respondent") is a wholly owned subsidiary of Alcoa Inc.

2.  Howmet is, and was during the referenced time period, a Delaware corporation.

3.  Howmet owns and operates a manufacturing plant located at or near 9 Roy Street, Dover, New Jersey 07801- 4308 (the "Dover or New Jersey facility").

4.  Howmet manufactures precision investment castings for aerospace and industrial gas turbine applications at its New Jersey facility.

5.  In July 1980, Respondent (then identified as Howmet Turbine Components Corporation) notified EPA Region II that it generates hazardous waste at its New Jersey facility. In August 1989, Respondent notified EPA Region II of its name change to Howmet Corporation.

6.  In July 1980, EPA assigned Howmet EPA Identification Number NJD 002 445 583 for the New Jersey facility (Dover Castings Division).

7.  Howmet is, and was during the referenced time period, a "person," as that term is defined in Section 1004(15) of RCRA, 42 U.S.C. § 6903(15), and 40 C.F.R. § 260.10 (1993) as incorporated by reference by NJAC 7:26G-4.1(a).

8.  Howmet is, and was during the referenced time period, the "owner" of the New Jersey facility as that term is defined in 40 C.F.R. § 260.10 (1993) as incorporated by reference by NJAC 7:26G-4.1(a).

9.  Howmet is, and was during the referenced time period, the "operator" of the New Jersey facility as that term is defined in 40 C.F.R. § 260.10 (1993) as incorporated by reference by NJAC 7:26G-4.1(a).

07 1306

**FILED**

JUL 2 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

10. Howmet is, and was during the referenced time period, a "hazardous waste" "generator" at its New Jersey facility as those terms are defined in 40 C.F.R. § 260.10 (1993) as incorporated by reference by NJAC 7:26G-4.1(a).

11. Howmet utilizes a liquid potassium hydroxide ("KOH") and water ("H20") solution ("KOH/H20") to leach out or remove (clean) ceramic core from metal castings during manufacturing operations at its New Jersey facility.

12. Howmet continually uses or re-uses the KOH/H20 solution to clean metal castings until the solution can no longer be effectively employed by Howmet for this purpose without being reclaimed or otherwise processed. (Hereinafter, used KOH/H20 solution no longer used by Howmet to clean castings will be referred to as "used KOH.")

13. During the time period of August 6, 1999 through September 27, 2000, Howmet accumulated the used KOH in a storage tank at its New Jersey facility and then either: a) discarded the used KOH as a hazardous waste by sending it to an off-site authorized hazardous waste disposal facility; or b) sent its used KOH off-site to Royster-Clark ("Royster"), a fertilizer manufacturer.

14. During the time period of August 6, 1999 through September 27, 2000, Howmet's decision on whether to send the used KOH off-site to an authorized treatment storage or disposal facility or to fertilizer manufacturer Royster was entirely contingent upon Royster's need for the KOH in its fertilizer manufacturing process. The used KOH was generated using the same ingredients and process regardless whether Howmet sent the used KOH off site as a hazardous waste or to Royster.

15. Used KOH generated at the New Jersey facility is aqueous with a pH equal to or greater than 12.5.

16. During the time period of August 6, 1999 through September 27, 2000, Howmet sent used KOH from its New Jersey facility to fertilizer manufacturer Royster-Clark, Inc. ("Royster") to be used in the production of land applied tobacco fertilizer at Royster's Plymouth and Rocky Mount, North Carolina facilities ("fertilizer manufacturing facilities").

17. Royster's fertilizer manufacturing facilities did not have EPA identification numbers through at least September 27, 2000.

18. During the time period of August 6, 1999 through September 27, 2000, Howmet sent the used KOH to Royster's fertilizer manufacturing facilities by tanker truck. The used KOH was pumped from the truck into storage tanks at the Royster facilities.

19. Royster pumped the stored used KOH received from Howmet into a fertilizer materials mixer, as needed. The used KOH was a source of potassium and controlled (neutralized) the pH of the fertilizer mixture.

20. During the time period of August 6, 1999 through September 27, 2000, Howmet sent twenty-six (26) shipments of used KOH from its New Jersey facility to Royster's manufacturing facilities. These shipments are represented on Attachment A.

21. During the time period of August 6, 1999 through September 27, 2000, Howmet did not prepare a hazardous waste manifest for, or send a hazardous waste manifest with, any of the 26 shipments of used KOH which it sent from its New Jersey facility to the Royster fertilizer manufacturing facilities. Instead, Howmet prepared and sent a hazardous materials bill of lading with each of the 26 shipments of used KOH which it sent from its New Jersey facility to the Royster fertilizer manufacturing facilities. These shipments are represented on Attachment A.

22. During the time period of August 6, 1999 through September 27, 2000, Howmet employed transporter Potter Transport, Inc. ("Potter") on twenty three (23) occasions to transport the used KOH from its New Jersey facility to Royster's fertilizer manufacturing facilities. These shipments are represented on Attachment A.

23. During the time period of August 6, 1999 through September 27, 2000, Potter did not have an EPA identification number to transport hazardous waste.

24. Howmet did not prepare, send or maintain at its facility land ban notifications for the used KOH which it sent to Royster's fertilizer manufacturing facilities from Howmet's New Jersey facility during the time period of August 6, 1999 through September 27, 2000.

25. The shipments of used KOH to Royster from Howmet's New Jersey facility were associated with a material safety data sheet (" MSDS"). The MSDS was prepared by Howmet. An accurate copy of the MSDS is set forth in Attachment B.

26. During the period of time of August 26, 1999 through February 24, 2000, the New Jersey facility sent thirteen (13) shipments of used KOH off-site for disposal as hazardous waste at an authorized treatment, storage or disposal facility. Each shipment manifest classified the waste as exhibiting RCRA hazardous waste characteristics of corrosivity (D002). These shipments of used KOH were aqueous with a pH greater than 12.5 and contained concentrations of chromium ranging from .92 to 51.5 parts per million using a gross metals analysis. These shipments are summarized in Attachment C.

3

RESPONDENT:

Howmet Corporation

BY: _____

NAME: JOHN A. RILEY

TITLE: ATTORNEY

DATE: 8-16-04

COMPLAINANT:

United States Environmental Protection Agency - Region 2

BY: _____

NAME: Amy Chester

TITLE: Attorney

DATE: 8/16/04

## ATTACHMENT A

Shipments of Used KOH from Howmet's Dover, New Jersey facility to
Royster's Plymouth and Rocky Mount, North Carolina facilities

| Shipment Date | Destination Facility | Shipper No. on Bill of Lading | Transporter | Volume |
|---|---|---|---|---|
| 8/6/99 | Royster Plymouth | 25318 | DSI Transport | 4125 gals. |
| 8/17/99 | Royster Rocky Mount | 25562 | DSI Transport | 3800 gals. |
| 10/11/99 | Royster Plymouth | 26266 | Potter Transport | 4000 gals. |
| 10/20/99 | Royster Plymouth | 26384 | Potter Transport | 3800 gals. |
| 11/15/99 | Royster Plymouth | 26736 | Potter Transport | 4167 gals. |
| 12/3/99 | Royster Plymouth | 26953 | Potter Transport | 4000 gals. |
| 3/2/00 | Royster Plymouth | 28451 | Potter Transport | 4100 gals. |
| 3/13/00 | Royster Plymouth | 28589 | Potter Transport | 4300 gals. |
| 3/27/00 | Royster Plymouth | 28761 | Potter Transport | 4300 gals. |
| 4/4/00 | Royster Plymouth | 28880 | Potter Transport | 4400 gals. |
| 4/13/00 | Royster Plymouth | 28984 | Potter Transport | 4200 gals. |
| 4/21/00 | Royster Rocky Mount | 29561 | Potter Transport | 4100 gals. |
| 5/1/00 | Royster Rocky Mount | 29673 | Potter Transport | 4400 gals. |
| 5/10/00 | Royster Plymouth | 29778 | Potter Transport | 4500 gals. |
| 5/26/00 | Royster Rocky Mount | 29965 | Potter Transport | 4300 gals. |
| 6/6/00 | Royster Rocky Mount | 30086 | Potter Transport | 4300 gals. |
| 6/15/00 | Royster Rocky Mount | 30143 | Potter Transport | 4000 gals. |
| 6/26/00 | Royster Rocky Mount | 30311 | Potter Transport | 4300 gals. |
| 7/5/00 | Royster Rocky Mount | 30371 | Potter Transport | 3800 gals. |
| 7/16/00 | Royster Rocky Mount | 30472 | Potter Transport | 3800 gals. |
| 8/10/00 | Royster Rocky Mount | 30646 | Potter Transport | 4200 gals. |
| 8/21/00 | Royster Rocky Mount | 30800 | Potter Transport | 4300 gals. |
| 8/31/00 | Royster Plymouth | 30931 | Potter Transport | 4200 gals |
| 9/11/00 | Royster Plymouth | 31042 | Potter Transport | 4300 gals. |
| 9/18/00 | Royster Plymouth | 31117 | Potter Transport | 4300 gals. |
| 9/27/00 | Royster Plymouth | 31220 | APC | 4300 gals. |

**ATTACHMENT B**

6

 **HOWMET CORPORATION**

## Material Safety Data Sheet

### General Information

Generators:

Howmet Dover Casting
Roy Street
Dover, New Jersey 07801-4305
201-361-0300

Howmet Hampton Casting
One Howmet Drive
Hampton, Virginia 23861
804-838-4680

Howmet Wichita Falls Casting
6200 Central Freeway
Wichita Falls, Texas 76307-1816
817-855-8100

Howmet LaPorte Casting
1110 East Lincolnway
LaPorte, Indiana 46350-3954
219-326-7400

Product name: Used Potassium Hydroxide Solution

Hazard Class: 8
Packing Group: II

Identification Number: UN1814
Label Required: Corrosive

Process generating the material: Caustic cleaning of metal castings (including ceramic core removal)

### Composition and Hazardous Ingredients

| Major constituents: | CAS Numbers | % | Permissible Exposure Limit (OSHA) in mg/m3 | Threshold Limit Value (ACGIH) in mg/m3 |
|---|---|---|---|---|
| Potassium hydroxide | 1310-58-3 | 20-30 | not established | 2 (ceiling) |
| Silica | 7631-86-9 | < 5 | 6 | 5 |
| Alumina | 1344-28-1 | < 5 | not established | 10 |
| Zircon | 10101-52-7 | < 5 | 5 | 5 |
| Water | 7732-18-5 | 65-80 | NA | NA |
| | | ~ 100 | | |

The total trace metals are less than 20 mg/l (ppm) and are distributed as follows:

| | | | |
|---|---|---|---|
| Mercury | < 0.005 | Copper | < 5 |
| Nickel | < 0.07 | Cobalt | < 10 |
| Chromium | < 1 | Iron | < 10 |
| Lead | < 2 | | |

### Physical Data

Appearance: clear to off-white mobile liquid
Specific gravity: 1.3
Water solubility: mixes with water

Odor: little or no odor
Density: 10.8 pounds per gallon
pH: 14~ (VERY CORROSIVE TO HUMAN TISSUE AND WHITE METALS!!!)

*Used Potassium Hydroxide Solution*

## Fire and Explosion Data

Potassium hydroxide solution does not burn, however it can react with aluminum metal to generate highly explosive hydrogen gas.

*Flash point;* none.

Upper and lower explosion limits: none/not applicable

Extinguishing media: not applicable

*Protective equipment:* Firefighters must wear gloves, boots, raincoats, face shields, and helmets to prevent skin and eye contact. Self-contained breathing apparatus must be worn in fire situations to prevent breathing of caustic mists.

## Reactivity Data

This material is stable when properly contained and handled. Potassium hydroxide attacks aluminum, tin, zinc and alloys containing these metals. Potassium hydroxide can react violently with strong mineral acids.

## Health Hazard Information

Concentrated solutions of potassium hydroxide are extremely corrosive to all human tissue including skin, eyes, and respiratory passages

*First Aid:*

EYE CONTACT: Immediately flush with running water for 15 minutes, including under the eyelids! Get medical attention!

SKIN CONTACT: Immediately flush with running water for 15 minutes. Get medical help if a large area is contacted or if irritation persists.

INHALATION: Mists generated through heating or agitation are corrosive to breathing passages. If an overdose occurs:

   1. Remove victim to fresh air,
   2. Restore and support breathing through artificial respiration, if necessary,
   3. Get medical help, and
   4. Keep victim quiet and warm until help arrives.

INGESTION: If victim is conscious, give 2-3 glasses of water to dilute the base. DO NOT INDUCE VOMITING: corrosive material may be aspirated into lungs.

*Used Potassium Hydroxide Solution*

<u>Spill, Leak, and Disposal Procedures</u>

Spill and leaks:

1. Keep unnecessary persons from the spill area.
2. Put on protective clothing and equipment (rubber gloves, apron, boots, goggles, and respirator for dusts and mists).
3. Stop the spill at the source.
4. Contain the spill.
5. Retrieve spilled material.
6. Decontaminate using water.

Disposal: controlled neutralization with acids.

<u>Special protection Information</u>

Those handling potassium hydroxide solution must wear protective clothing and equipment to prevent contact with the solution (rubber gloves, apron, boots, long sleeve shirt, and chemical safety goggles).

An eyewash station, washing facilities, and safety shower should be readily available in areas of handling and use.

<u>Special Precautions and Comments</u>

Stored containers must be inspected weekly for leaks and other signs of deterioration. Problems must be corrected immediately.

<u>Prepared By:</u>

Keith T. Shell        (Manager, Environmental Engineering)        5/6/96
616-694-7226          FAX = 616-694-7293

## ATTACHMENT C

Shipments of Used KOH from Howmet's Dover, New Jersey facility
as Hazardous Waste to an authorized Treatment, Storage or Disposal facility (TSDF)

| Shipment Date | Destination Facility | Manifest No. | Hazardous Waste Code on Manifest | Chromium Level * | pH | Volume |
|---|---|---|---|---|---|---|
| 08/26/99 | Philip Services | PAG 0284922 | D002 | 3.57 | >12.5 | 4835 gals. |
| 10/26/99 | Philip Services | PAG0988271 | D002 | 0.96 | >12.5 | 4799 gals. |
| 11/05/99 | Philip Services | PAG0989450 | D002 | 0.92 | >12.5 | 4895 gals. |
| 11/23/99 | Philip Services | PAG137322 | D002 | 51.5 | >12.5 | 4420 gals. |
| 12/10/99 | Philip Services | PAG137609 | D002 | 1.97 | >12.5 | 4586 gals. |
| 12/17/99 | Philip Services | PAG135707 | D002 | 39.4 | >12.5 | 4503 gals. |
| 01/10/00 | Philip Services | PAG135896 | D002 | 1.82 | >12.5 | 5017 gals. |
| 01/20/00 | Philip Services | PAG136095 | D002 | 0.99 | >12.5 | 5027 gals. |
| 01/28/00 | Philip Services | PAG136162 | D002 | 0.97 | >12.5 | 4503 gals. |
| 02/07/00 | Philip Services | PAG136725 | D002 | 2.74 | >12.5 | 4586 gals. |
| 02/11/00 | Philip Services | PAG136812 | D002 | 9.78 | >12.5 | 4329 gals. |
| 02/17/00 | Philip Services | PAG136874 | D002 | 1.61 | >12.5 | 5300 gals. |
| 02/24/00 | Philip Services | PAG136916 | D002 | 1.06 | >12.5 | 5156 gals. |

*All information on this chart obtained from Waste Analysis Profile for each shipment. (All units are ppm, per Gross Metals Analysis.)

# *EXHIBIT B*

UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
REGION 6
DALLAS, TEXAS

In the Matter of:                                    §
                                                     §
Howmet Corporation                                   §
6200 Central Freeway                                 §
Wichita Falls, Texas 76307-1616                      §    Docket No. RCRA-06-2003-0912
                                                     §
EPA I. D. No. TXD095214185                           §
                                                     §
Respondent.                                          §
                                                     §

## STIPULATION OF FACTS

Complainant and Respondent hereby agree and stipulate that the facts set forth below in

paragraphs 1 through 22 are true and correct.  The stipulated facts relate to Respondent's facility

in Wichita Falls, Texas, and the period from on or about March 26, 1999, through on or about

September 19, 2000, (relevant time period), unless stated otherwise.  The parties agree that this

stipulation and the attachments hereto are admissible as evidence in this proceeding.

1.      Howmet Corporation (Howmet) is a wholly-owned subsidiary of Alcoa, Inc.

2.      Howmet is a Delaware corporation.

3.      Howmet owned and operated a manufacturing plant located at 6200 Central

Freeway, Wichita Falls, Texas (Facility).

4.      Howmet manufactured precision investment castings for aerospace and industrial

gas turbine applications at the Facility.

5.      In April, 1980, Howmet filed a notice of registration identifying itself as a large

quantity generator of hazardous waste at the Facility.  The notice of registration was updated on

September 18, 2001, and represented that the Facility generated "hazardous waste," as defined in

Texas Health & Safety Code § 361.003(12) and 30 TAC § 335.1(62) (40 C. F. R. § 261.3).

*07 1306*

**FILED**

JUL 2 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

6.     EPA assigned Howmet EPA identification number TXD095214185 for the Facility.

7.     Howmet is and during the relevant time period was a "person" as that term is defined in Texas Health & Safety Code § 361.003(23), 42 U. S. C. § 6903(15) and 40 C. F. R. § 260.10.

8.     Howmet was the "operator" and "owner" of the Facility as those terms are defined in 30 TAC §§ 335.1(101) and (100) (40 C. F. R. § 260.10).

9.     Howmet was a "hazardous waste" "generator" as those terms are defined in 30 TAC §§ 335.1(62) and (58) (40 C. F. R. § 260.10).

10.     Howmet utilized a liquid potassium hydroxide (KOH) and water (H20) solution (KOH/H20) to leach out or remove (clean) ceramic core from metal castings during manufacturing operations at the Facility.

11.     Howmet continually used or re-used the KOH/H20 solution to clean metal castings until the solution could no longer be effectively employed by Howmet for this purpose without being reclaimed or otherwise processed.  Hereinafter, used KOH/H20 solution no longer used by Howmet to clean castings is referred to as "used KOH."

12.     Howmet accumulated the used KOH in a storage tank at the Facility and then either (a) discarded the used KOH as a hazardous waste by sending it to an off-site, authorized hazardous waste disposal facility or (b) sent its used KOH off-site to Royster-Clark, Inc., (Royster), a fertilizer manufacturer.

13.     During the relevant time period Howmet's decision as to whether to send the used KOH off-site to an authorized hazardous waste treatment, storage or disposal facility or to Royster was entirely contingent upon Royster's need for the KOH in its fertilizer manufacturing

process. The used KOH was generated using the same ingredients and process, regardless of whether Howmet sent the used KOH off-site as a hazardous waste or to Royster.

14.    The used KOH generated at the Facility was aqueous with a pH of 12.5 or greater.

15.    During the relevant time period Howmet sent 24 shipments of used KOH from the Facility to Royster to be used in the production of land-applied tobacco fertilizer at Royster's Plymouth and Rocky Mount, North Carolina, facilities (fertilizer manufacturing facilities). The dates of these shipments are shown on Attachment A.

16.    Royster's fertilizer manufacturing facilities did not have EPA identification numbers.

17.    Howmet sent the used KOH to Royster's fertilizer manufacturing facilities by tanker truck. The used KOH was pumped from the truck into storage tanks at the Royster facilities.

18.    Royster pumped the stored used KOH received from Howmet into a fertilizer materials mixer, as needed.   The used KOH was a source of potassium and controlled (neutralized) the pH of the fertilizer mixture.

19.    Howmet did not prepare a hazardous waste manifest for, or send a hazardous waste manifest with, any of the 24 shipments of used KOH sent from its Facility to the Royster fertilizer manufacturing facilities.  Instead, Howmet prepared and sent a hazardous materials bill of lading with each of the 24 shipments.

20.    The shipments of used KOH to Royster from Howmet's Facility were associated with a material safety data sheet prepared by Howmet, a copy of which is attached as Attachment B.

3

21.    Prior to and during the relevant time period Howmet did not prepare or maintain land ban notifications for the used KOH sent to Royster's fertilizer manufacturing facilities and did not send such notifications to Royster's fertilizer manufacturing facilities.

22.    During the period from December 19, 1997, and October 16, 2001, Howmet sent five shipments of used KOH off-site for disposal as hazardous waste at a hazardous waste treatment, storage or disposal facility. Each shipment manifest classified the waste as exhibiting RCRA hazardous waste characteristics of corrosivity (D002) and toxicity (D007). The used KOH in these shipments was aqueous with a pH greater than 12.5. These shipments are shown on Attachment C.

So Agreed:

Date: 10/1/04

John C. Emerson
Assistant Regional Counsel
EPA Region 6

Attorney for Complainant

Date: Sept. 27, 2004

John A. Riley
Vinson & Elkins L. L. P.

Attorneys for Respondent Howmet Corporation

473194_1.DOC

4

## Attachment A

## Shipments of KOH Solution From Howmet's Texas Facility to RCI's North Carolina Facilities

| Shipment Date | Destination | Bill of Lading/Invoice | Transporter | Volume |
|---|---|---|---|---|
| 3/26/99 | RCI (Rocky Mount) | 3282 | DSI | 3600 gals. |
| 4/12/99 | RCI (Rocky Mount) | 3437 | DSI | 3600 gals. |
| 4/27/99 | RCI (Plymouth) | 3593 | DSI | 3600 gals. |
| 5/12/99 | RCI (Rocky Mount) | 3717 | DSI | 3600 gals. |
| 5/12/99 | RCI | 3720 | DSI | 3600 gals. |
| 6/3/99 | RCI (Plymouth) | | DSI | 3600 gals. |
| 6/16/99 | RCI (Plymouth) | 4049 | DSI | 3600 gals. |
| 7/19/99 | RCI (Plymouth) | 4452 | DSI | 3600 gals. |
| 8/5/99 | RCI (Rocky Mount) | | DSI | 3600 gals. |
| 8/18/99 | RCI (Plymouth) | 5233 | DSI | 3600 gals. |
| 9/1/99 | RCI (Rocky Mount) | 5366 | DSI | 3600 gals. |
| 10/5/99 | RCI (Plymouth) | 5654 | DSI | 3600 gals. |
| 11/15/99 | RCI (Plymouth) | 5010 | DSI | 3600 gals. |
| 3/6/00 | RCI (Plymouth) | 7961 | DSI | 3600 gals. |
| 3/23/00 | RCI (Plymouth) | 8119 | DSI | 3600 gals. |
| 4/10/00 | RCI (Plymouth) | 1498 | DSI | 3600 gals. |
| 5/2/00 | RCI (Rocky Mount) | 1655 | DSI | 3600 gals. |
| 5/2/00 | RCI (Rocky Mount) | 1656 | DSI | 3600 gals. |
| 6/14/00 | RCI (Plymouth) | | DSI | 3600 gals. |
| 7/17/00 | RCI (Rocky Mount) | 0958 | DSI | 3600 gals. |
| 8/2/00 | RCI (Plymouth) | 1125 | Trimac | 3600 gals. |
| 8/23/00 | RCI (Plymouth) | 1287 | DSI | 3600 gals. |
| 8/23/00 | RCI (Plymouth) | 1309 | Trimac-DSI | 3600 gals. |
| 9/19/00 | RCI (Plymouth) | 1550 | | 3600 gals. |

**Attachment B**

Mar-26-2002  03:41pm  From-OECA-ORE-RCRA ENr                    202-564-0022          P.002/004  F-866

 **HOWMET CORPORATION**

## *Material Safety Data Sheet*

**General Information**

Generators:

| | |
|---|---|
| Howmet Dover Casting<br>Roy Street<br>Dover, New Jersey 07801-4308<br>201-361-0300 | Howmet Hampton Casting<br>One Howmet Drive<br>Hampton, Virginia 23661<br>804-838-4650 |
| Howmet Wichita Falls Casting<br>6200 Central Freeway<br>Wichita Falls, Texas 76307-1616<br>817-855-8100 | Howmet LaPorte Casting<br>1110 East Lincolnway<br>LaPorte, Indiana 46350-3954<br>219-326-7400 |

Product name: *Used Potassium Hydroxide Solution*

Hazard Class: 8      Identification Number: UN1814
Packing Group: II    Label Required: Corrosive

Process generating the material: Caustic cleaning of metal castings (including ceramic core removal)

**Composition and Hazardous Ingredients**

| Major constituents: | CAS Numbers | % | Permissible Exposure Limit (OSHA) in mg/m3 | Threshold Limit Value (ACGIH) in mg/m3 |
|---|---|---|---|---|
| Potassium hydroxide | 1310-58-3 | 20-30 | not established | 2 (ceiling) |
| Silica | 7631-86-9 | < 5 | 5 | 5 |
| Alumina | 1344-28-1 | < 5 | not established | 10 |
| Zircon | 10101-52-7 | < 5 | 5 | 5 |
| Water | 7732-18-5 | 65-80 | NA | NA |
| | | ~ 100 | | |

The total trace metals are less than 20 mg/l (ppm) and are distributed as follows:

| | | | |
|---|---|---|---|
| Mercury | < 0.005 | Copper | < 5 |
| Nickel | < 0.07 | Cobalt | < 10 |
| Chromium | < 1 | Iron | < 10 |
| Lead | < 2 | | |

**Physical Data**

Appearance: clear to off-white mobile liquid
Specific gravity: 1.3
Water solubility: mixes with water

Odor: little or no odor
Density: 10.8 pounds per gallon
pH: 14+ *(VERY CORROSIVE TO HUMAN TISSUE AND WHITE METALS!!!)*

GOVERNMENT
EXHIBIT
3
06-2003-0912

*Used Potassium Hydroxide Solution*

## Fire and Explosion Data

Potassium hydroxide solution does not burn, however it can react with aluminum metal to generate highly explosive hydrogen gas.

Flash point: none.

Upper and lower explosion limits: none/not applicable

Extinguishing media: not applicable

Protective equipment: Firefighters must wear gloves, boots, raincoats, face shields, and helmets to prevent skin and eye contact. Self-contained breathing apparatus must be worn in fire situations to prevent breathing of caustic mists.

## Reactivity Data

This material is stable when properly contained and handled. Potassium hydroxide attacks aluminum, tin, zinc, and alloys containing these metals. Potassium hydroxide can react violently with strong mineral acids.

## Health Hazard Information

Concentrated solutions of potassium hydroxide are extremely corrosive to all human tissue including skin, eyes, and respiratory passages

*First Aid:*

EYE CONTACT: Immediately flush with running water for 15 minutes, including under the eyelids! Get medical attention!

SKIN CONTACT: Immediately flush with running water for 15 minutes. Get medical help if a large area is contacted or if irritation persists.

INHALATION: Mists generated through heating or agitation are corrosive to breathing passages. If an overdose occurs:

1. Remove victim to fresh air,
2. Restore and support breathing through artificial respiration, if necessary,
3. Get medical help, and
4. Keep victim quiet and warm until help arrives.

INGESTION: If victim is conscious, give 2-3 glasses of water to dilute the base. DO NOT INDUCE VOMITING! corrosive material may be aspirated into lungs.

Mar-25-2002  03:42pm    From-OECA-ORE-RCRA ENF                    202-564-0022        ·---  P 0047003   F-966

*Used Potassium Hydroxide Solution*

<u>Spill, Leak, and Disposal Procedures</u>

Spill and leaks:

1. Keep unnecessary persons from the spill area.
2. Put on protective clothing and equipment (rubber gloves, apron, boots, goggles, and respirator for dusts and mists).
3. Stop the spill at the source.
4. Contain the spill.
5. Retrieve spilled material.
6. Decontaminate using water.

Disposal: controlled neutralization with acids.

<u>Special protection Information</u>

Those handling potassium hydroxide solution must wear protective clothing and equipment to prevent contact with the solution (rubber gloves, apron, boots, long sleeve shirt, and chemical safety goggles).

An eyewash station, washing facilities, and safety shower should be readily available in areas of handling and use.

<u>Special Precautions and Comments</u>

Stored containers must be inspected weekly for leaks and other signs of deterioration. Problems must be corrected immediately.

<u>Prepared By:</u>

Keith T. Shell          (Manager, Environmental Engineering)        5/8/96
616-894-7225            FAX = 616-894-7293

3

**Attachment C**

**Shipments of Used KOH from Howmet's Texas Facility
as Hazardous Waste to an Authorized Treatment,
Storage or Disposal facility**

| Shipment Date | Destination Facility | Manifest No. | Volume |
|---|---|---|---|
| 12/19/97 | LESI (Lone Mountain) | 01339444 | 3600 gals. |
| 1/6/99 | Safety Kleen (Lone Mountain) | 01889380 | 3600 gals. |
| 11/8/00 | Safety Kleen (Lone Mountain) | 02221807 | 3600 gals. |
| 12/5/00 | Safety Kleen (Lone Mountain) | 02221793 | 3852 gals. |
| 10/16/01 | Safety Kleen (Lone Mountain) | S00657666 | 3150 gals. |