UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
HOWMET CORPORATION,                 )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civ. Action No. 07-1306 (EGS)
                                    )
UNITED STATES ENVIRONMENTAL         )
PROTECTION AGENCY and STEPHEN       )
L. JOHNSON, Administrator,          )
                                    )
            Defendants.             )
_____ )

**MEMORANDUM OPINION**

Plaintiff Howmet Corporation ("Howmet") appeals a final decision by Defendant United States Environmental Protection Agency ("EPA") penalizing Howmet $309,091 for violations of the Resource Conservation and Recovery Act and the Hazardous and Solid Waste Amendments of 1984, 42 U.S.C. §§ 6901 *et seq*. (collectively "RCRA"). Howmet claims the penalty is arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. The EPA assessed the penalty against Howmet based on the agency's determination that Howmet shipped certain used materials to a fertilizer company without following the proper procedures under RCRA. The parties have stipulated to the facts and to the penalty amount. The only issues on review are whether the materials Howmet shipped fall within the definition of "spent materials" according to RCRA regulations and, if so, whether Howmet had fair notice of the EPA's interpretation of those regulations. Each party has moved for summary judgment. Upon consideration of the motions, responses and replies thereto, applicable law, and the entire

record, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

I.     **BACKGROUND**

The parties have stipulated to the following facts.  Howmet is a wholly owned subsidiary of Alcoa Inc. and is a Delaware corporation, with facilities (as relevant here) in Dover, New Jersey and Wichita Falls, Texas.  Howmet manufactures precision investment casings for aerospace and industrial gas turbines.  At both its New Jersey and Texas facilities, Howmet used a solution of liquid potassium hydroxide ("KOH") to clean the metal casings.  After use, the KOH was hazardous in that it was "corrosive" under EPA regulations.  When the used KOH became too contaminated for continued use as a cleaner, Howmet either: a) shipped the used KOH to a permitted hazardous waste facility per RCRA hazardous waste requirements; or b) shipped the used KOH to Royster-Clark, Inc. ("Royster"), a fertilizer manufacturer, without adhering to RCRA hazardous waste requirements.  The decision to ship to the hazardous waste facility or to Royster "depended solely on Royster's demand for KOH."  Compl. ¶ 21.  Royster, without further processing, treatment, or reclamation, added the used KOH as an ingredient to its fertilizer mixture.  Howmet did not believe that the used KOH shipped to Royster was "waste" under RCRA regulations.

Regions 2 (covering New Jersey) and 6 (covering Texas) of EPA brought RCRA administrative enforcement actions against Howmet in 2003 alleging that Howmet's shipment of used KOH to Royster did not comply with RCRA and its implementing regulations.  The two cases were consolidated for purposes of litigation before an administrative law judge ("ALJ").  The ALJ assessed a $309,091 civil penalty for violations of RCRA, rejecting Howmet's

argument that the used KOH shipped to Royster was not "waste" because it was not a "spent material." *See* ALJ Order on Motions at 21. The ALJ also ruled that Howmet had fair notice of EPA's interpretation of the applicable regulations. *Id.*

Howmet appealed the ALJ's ruling to EPA's Environmental Appeals Board ("EAB"). The EAB, in a comprehensive opinion laying out the relevant statutory and regulatory text and history, upheld the ALJ's decision. *See* EAB Decision at 4. The EAB determined that the used KOH Howmet shipped to Royster was indeed a "spent material" under RCRA, and that Howmet violated RCRA by failing to transport the used KOH according to the applicable hazardous waste procedures. *Id.* at 14, 39-40. The EAB also upheld the ALJ's decision that Howmet was not denied due process because Howmet could have determined, with "ascertainable certainty," that the used KOH it shipped to Royster was a "spent material" under RCRA and its implementing regulations. *Id.* at 44. Howmet, though continuing to stipulate to the facts and the penalty, appeals to this Court on both the issues of liability and fair notice.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is

entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975).

Review of final agency action under the APA is highly deferential, as the court may only set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). Moreover, an agency's interpretation of its own regulation is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997). If the text of the agency's regulation is ambiguous, the court accords the agency's interpretation broad deference. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

## III. DISCUSSION

With the facts and penalty amount stipulated, both parties agree that the case is appropriate for resolution on summary judgment. There are two legal issues to resolve, the same two legal issues extensively analyzed by both the ALJ and EAB in the administrative proceedings. The first is whether Howmet is liable for shipping hazardous waste, the used KOH, without complying with the applicable RCRA regulations. The answer to this first question depends on whether the used KOH is a "spent material" under RCRA. The second issue is whether Howmet had fair notice, as required by due process, of EPA's interpretation that the used KOH was "spent material." Agreeing with the EAB's persuasive and comprehensive analysis of both issues, the Court finds that Howmet violated RCRA and its implementing regulations and that Howmet had fair warning that the used KOH was "spent material."

**A. Whether Howmet is liable because it did not follow applicable RCRA regulations in shipping the used KOH, which was "spent material" under RCRA.**

RCRA has been aptly described as a statute that "empowers EPA to regulate hazardous wastes from cradle-to-grave." *Meghrig v. KFC Western Inc.*, 516 U.S. 479 483 (1996). Under RCRA and its regulations, "hazardous waste" is a subset of materials deemed "solid waste," thus a material cannot be "hazardous waste" unless it is first determined "solid waste." 42 U.S.C. § 6903; 40 C.F.R. § 261.3(a).[1] In general, "solid waste" is broadly defined as any "discarded material," including "secondary materials" when they are recycled. 40 C.F.R. § 261.2(c). Under EPA regulations, "discarded material" also includes certain secondary materials that are "recycled – or accumulated, stored, or treated before recycling." *Id*. A "spent material" is one sort of secondary material when it is recycled, "used in a manner constituting disposal," or "used to produce products that are applied to or placed on the land or otherwise contained in products that are applied to or placed on land." 40 C.F.R. § 261.2(c). A "spent material" is defined as "any material that has been used and as a result of contamination can no longer serve the purpose for which it was produced without processing." 40 C.F.R. § 261.1(c)(1).

The primary issue before the Court is whether the used KOH Howmet shipped to Royster, for its fertilizer mixture, falls within the "spent material" definition. EPA argues that the proper reading of the regulation centers on the initial use of a material. In other words, the KOH was initially *used* as a cleansing agent, and though used KOH may not be "spent material" if it is later used for a similar purpose (i.e., as a cleanser), the used KOH was a "spent material" when *later used* for a different purpose as a fertilizer ingredient applied to land. Howmet responds that a text-focused reading of the regulation demands inquiry into the "purpose for which it [the KOH] was produced," and that KOH is produced with multiple uses in mind, namely as a cleansing

---

[1] Much of the statutory and regulatory background is provided in the EAB's Decision at 4-6.

agent and as a fertilizer ingredient. Specifically, Howmet proffers this definition: "The purpose of KOH is to provide a high concentration of hydroxide ions and a concentrated source of potassium, which in turn results in KOH being effective in various different applications and for various different uses." Pl. Mot. for Summ. J. at 15. Thus, according to Howmet's reading of the regulation, the used KOH was not "spent material" because it could still serve "the purpose for which it was produced without processing."

The Court, mindful of the deference due to an agency's interpretation of its own regulations, finds that EPA's interpretation is not arbitrary, capricious, or an abuse of discretion. As an initial matter, the Court agrees with the EAB that the regulation is ambiguous. The word "purpose" and the phrase "the purpose for which it was produced" are not defined in the regulations, nor is their meaning clear solely on the face of the regulation. The EAB properly looked to the regulatory history of the "spent material" definition, the entire RCRA statute and implementing regulations, and the relevant agency rulings, statements, and interpretations in examining the regulation.

The current regulations on "spent materials" were promulgated in 1985, yet predecessor rules shed light on the current controversy. In the 1980 predecessor rules, there was no mention of "spent material" or "purpose," rather a material was solid waste when it was "used" and "sometimes discarded." *See* 45 Fed. Reg. 33,084, 33,119 (May 19, 1980). Under these rules, the EPA considered a material waste if it was no longer suited for its "original intended use." *See* 40 C.F.R. § 261.2(b)(2) (1980). In 1983, the EPA proposed to amend the regulations to no longer base a material's status on whether it is "sometimes discarded," instead looking to the type of material and how it was managed or recycled. *See* 48 Fed. Reg. 14,472, 14,475 (Apr. 4, 1983).

The proposed definition for "spent material," introduced for the first time in the 1983 proposed regulation, was "any material that has been used and has served its original purpose." *Id*. at 14,508.  Finally in the 1985 final rule, the regulation at issue here, the EPA changed the wording from "served its original purpose" to "can no longer serve the purpose for which it was produced without processing."  40 C.F.R. § 1(c)(1).  The purpose of this change, as identified in the 1985 preamble to the rule, was to remove the ambiguous "original purpose" phrase as too narrow.  *See* 50 Fed. Reg. 614, 624 (Jan. 4, 1985).  The EPA clarified that a continued, similar use of a material, even if not identical to its original use, would not fall within the purview of the 1985 "spent material" definition.  *See Id*.  The point of this inquiry is that the EPA has continuously and publicly associated "purpose" with "initial use" in clarifying the "spent material" definition.  Applying that interpretation to Howmet, the EPA reasonably concluded that the used KOH it shipped to Royster for use as a fertilizer ingredient was "spent material" because its later use (fertilizer ingredient) was not similar to its initial use (cleanser).

Even a brief review of RCRA and its implementing regulations as a whole provides further support that the EPA's definition of "spent material" is not arbitrary, capricious, or an abuse of discretion.  RCRA's sweep is far-reaching, with its broad definition of solid waste ("any discarded material") and its inclusion of recyclable materials.  But its sweep is not unlimited, as certain secondary materials reused in a continuous process have been found beyond EPA's regulatory reach.  *See American Mining Congress v. EPA*, 824 F.2d 1177, 1186 (D.C. Cir. 1987) (concluding that the EPA may not regulate, under RCRA, those materials that "have not yet become part of the waste disposal problem").  EPA treats as non-waste certain materials that are "reused as ingredients in an industrial process to make a product, provided the materials are not

being reclaimed." 40 C.F.R. § 261.2(e)(1)(i).  As the EAB noted, however, there is a proviso that the material not be "used in a manner constituting disposal, or used to produce products that are applied to land." 40 C.F.R. § 261.2(e)(2)(i).  Those materials "applied to land" are treated as waste under RCRA regulations.  The implication, as the EAB noted, is clear: Howmet's used KOH shipped for reuse in Royster's fertilizer mixture (i.e., "applied to land") is the kind of activity the EPA intended to regulate.  *See* EAB Decision at 20-24.  The EPA's approach to Howmet, then, is consistent with treating re-used products applied to land as solid waste.  *See* 40 C.F.R. § 261.2(e)(2)(i).

Finally, the EPA has consistently interpreted and applied the "spent material" definition in association with a material's initial or original use.  A 1986 EPA Guidance Manual, prepared just a year after the 1985 final rule at issue here, states that the "EPA interprets 'the purpose for which a material was produced' to include all uses of the product that are similar to the *original use* of the particular batch of material in question."  *See* Office of Solid Waste, U.S. EPA, *Guidance Manual on the RCRA Regulation of Recycled Hazardous Wastes* (Mar. 1986) ("1986 Guidance Manual") (emphasis added); *see also* 51 Fed. Reg. 26,892 (July 28, 1986) (announcing Guidance Manual's availability).  Later advisory opinions follow suit.  *See* EAB Decision at 37-38 (citing advisory letters from 1988 through 1994 supporting EPA's contention here that whether a material is a "spent material" depends on whether it is reused in a manner consistent with its original use).  Of course, the Court is not bound by these interpretations, but they surely provide reason to give greater deference to the EPA's position.  *See* EAB Decision at 35 (degree of deference accorded to informal agency interpretation depends, in part, on "its consistency with earlier and later pronouncements") (quoting *Skidmore v. Swift*, 323 U.S. 134, 140 (1944)).

In sum, it was not arbitrary, capricious, or an abuse of discretion for the EPA to conclude that the used KOH Howmet shipped was "spent material" and was therefore subject to RCRA's regulations for the management, storage, and transport of hazardous waste.

**B.     Whether Howmet had fair warning of EPA's interpretation.**

Having upheld the EAB's Decision as to Howmet's liability for violating RCRA, the second issue for the Court is whether Howmet had fair notice that the EPA would treat the used KOH as "spent material." A party may not be penalized for violating a regulation when that party has not received fair and adequate notice of what the regulation requires. *See Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1328-29 (D.C. Cir. 1995). As a matter of constitutional due process, the key question is not whether the regulation is free from ambiguity, but instead whether the regulated party, acting in good faith, could have determined with "ascertainable certainty" the standard by which it was expected to conform. *Id*. at 1329. Here, the question is whether Howmet could have or should have known with "ascertainable certainty" that the used KOH it shipped to Royster was "spent material" under RCRA. The answer is yes.

Even though the Court agrees that the regulation, taken in isolation, is ambiguous, the association between "purpose" and "initial use" could have been determined from the preambles to the 1985 final rule and the 1983 proposed rule as analyzed above. Even more clearly, the EPA's 1986 Guidance Manual expressly stated that the "EPA interprets 'the purpose for which a material was produced' to include all uses of the product that are similar to the original use of the particular batch of material in question." *See* 1986 Guidance Manual at 1-7. As the EAB noted, EPA's position was reiterated in publicly available advisory letters. *See* EAB Decision at 37-38. Finally, Howmet never even inquired about whether the used KOH it shipped to Royster was a

"spent material." *See Tex. E. Prods. Pipeline Co. v. Occupational Health & Safety Rev. Comm'n*, 827 F.2d 46, 50 (7th Cir. 1987) (failure of inquiry is relevant consideration in determination of fair notice to regulated party). The Court finds this particularly striking since Howmet, according to its own stipulations, treated the used KOH it did not sell to Royster as hazardous waste, following the applicable RCRA management and shipment regulations. There was no difference in the material, only in the point of destination.

As with the finding on liability, the Court agrees with the EAB that Howmet assumed a "calculated risk" in failing to inquire about the "spent material" definition. *See* EAB Decision at 47 (citing *DiCola v. Food & Drug Admin.*, 77 F.3d 504, 508 (D.C. Cir. 1996)). Thus, Howmet was not denied due process because it had fair notice of EPA's interpretation that the used KOH it shipped to Royster as an ingredient in fertilizer was "spent material" under RCRA.

### III. CONCLUSION

EPA's interpretation that the used KOH shipped by Howmet was a "spent material" under RCRA is not arbitrary, capricious, or an abuse of discretion and could have been determined with "ascertainable certainty" prior to Howmet's actions. Thus, the Court upholds the EAB's Decision that Howmet violated RCRA and that Howmet was not denied due process. As stipulated by the parties, Howmet must pay to the EPA a penalty of $309,091. Plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

**Signed:**      **Emmet G. Sullivan**
              **United States District Judge**
              **September 23, 2009**